IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM B. SPALDING, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:12-CV-1181-RWS |
| FINANCIAL INDUSTRY : | |
| REGULATORY AUTHORITY, : | |
| INC., : | |
| : | |
| Defendant. : | |

## **ORDER**

This case is before the Court on Plaintiff's Motion for Remand [6] and Defendant's Motion to Dismiss [3]. After reviewing the record, the Court enters the following Order.

## **Background**

Plaintiff is an investment advisor. From 1996 to 2010, he was an advisor with Securities America, Inc. Plaintiff and Securities America are regulated by the Financial Industry Regulatory Authority ("FINRA"). FINRA is a non-profit corporation registered with the Securities and Exchange Commission. FINRA regulates securities firms and investment advisors. FINRA derives its authority

and duties from the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§ 78a, *et seq*.

FINRA's duties under the 1934 Act include establishing and maintaining a system for collecting and retaining registration information about investment advisors. Registration information includes information about arbitration proceedings involving investment advisors. FINRA maintains such information in an electronic database called the Central Registration Depository ("CRD") and in a publicly-accessible electronic database called "FINRA BrokerCheck."

From approximately September 2006 to January 2009, Securities America sold, as investments, certain notes issued by special purpose corporations affiliated with Medical Capital Holdings, Inc. Securities America performed the due diligence on the Medical Capital notes and encouraged its investment advisors, including Plaintiff, to offer Medical Capital notes to their clients. Ultimately, numerous individuals lost considerable money on Medical Capital note investments.

Securities America was inundated with arbitrations by aggrieved investors alleging that Securities America had obtained important information regarding the risks of the notes from its due diligence, but failed to disclose

2

those risks to investors who purchased the notes. Investors also filed several federal class-action lawsuits against Securities America and other defendants, which were consolidated in the United States District Court for the Northern District of Texas. Individual advisors, including Plaintiff, were not involved in Securities America's due diligence process for the Medical Capital notes.

Securities America was named in seven arbitrations regarding the Medical Capital notes. Securities America submitted information to FINRA, which caused these arbitrations to be included on Plaintiff's profiles in CRD and BrokerCheck. Because Plaintiff was not involved in the due diligence process at issue in the arbitrations, he argues that the arbitrations should not have been disclosed on his record. Plaintiff maintains that his record is spotless with the exception of these arbitration disclosures.

On August 4, 2011, Securities America settled all of the claims regarding the Medical Capital notes in the class-action suit in the Northern District of Texas ("Global Settlement"). No part of the Global Settlement involved a finding of liability against Plaintiff. The Global Settlement also resolved the seven arbitrations, and none of the arbitrations progressed to a hearing on the merits. As a result of the Global Settlement, Plaintiff lost the opportunity to

3

have arbitrators find that he was not involved in Securities America's alleged due diligence errors and recommend that the arbitrations be expunged from his FINRA record.

Plaintiff filed suit in the Superior Court of Cobb County, Georgia on March 17, 2012, seeking a declaratory judgment under the Georgia Declaratory Judgment Act, O.C.G.A. §§ 9-4-1, *et seq*, expunging the arbitration disclosures on Plaintiff's CRD and BrokerCheck profiles. FINRA removed the suit to this Court on April 5, 2012. FINRA then filed a motion to dismiss Plaintiff's action. Plaintiff seeks to remand the case to state court on grounds that this Court lacks subject matter jurisdiction.

## Discussion

### I.   Plaintiff's Motion to Remand

The Court must first determine whether it has subject matter jurisdiction over this case. Defendant removed the case based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331,[1] 1441, and 1446. (Notice of Removal, Dkt. [1].) Plaintiff argues, however, that no federal question exists.

---

[1] Defendant's Notice of Removal actually cites § 1332, which governs diversity jurisdiction. However, the content of the Notice clearly indicates that Defendant is asserting federal question jurisdiction under § 1331.

4

(See generally Plaintiff's Motion to Remand Brief ("Pl.'s MTR Br."), Dkt. [6-1].)

Federal courts are courts of limited jurisdiction. "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." Univ. of S. Ala. V. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." Id. In other words, there is a "presumption in favor of remand" that the removing party must overcome. Id.; Leonard v. Enterprise Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction.").

"The test ordinarily applied for determining whether a claim arises under federal law is whether a federal question appears on the face of the plaintiff's well-pleaded complaint." Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1343 (11th Cir. 2009). "As a general rule, a case arises under federal law only if it is federal law that creates the cause of action." Id. (quoting Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996)). This well-pleaded complaint rule, "makes the plaintiff the master of the claim; he or she

5

may avoid federal jurisdiction by exclusive reliance on state law." <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).

However, an "independent corollary" to the well-pleaded complaint rule is that "a plaintiff may not defeat removal by simply "omitting to plead necessary federal questions." <u>Rivet v. Regions Bank of La.</u>, 522 U.S. 470, 475 (1998) (quoting <u>Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.</u>, 463 U.S. 1, 22 (1983)). Furthermore, "in certain cases[,] federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." <u>Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg</u>, 545 U.S. 308, 312 (2005).

Plaintiff argues that the Complaint seeks relief solely under Georgia law, and therefore, there is no basis for federal question jurisdiction. (Pl.'s MTR Br., Dkt. [6-1] at 11.) Defendant responds that the 1934 Act "is at the heart of all of the issues in this dispute" and therefore, removal was appropriate. (Defendant's Opposition to Plaintiff's Motion for Remand ("Def.'s Opp. Br."), Dkt. [8] at 7.) The parties appear to agree that the root analysis for purposes of this motion is whether Plaintiff's claim implicates significant federal issues.

6

Defendant's Notice of Removal relies on the following to establish federal-question jurisdiction:

- FINRA was organized under the 1934 Act and derives its functions and duties, including maintaining a registration system for investment advisors, from the 1934 Act.

- The 1934 Act requires FINRA to submit its rules, policies, practices and interpretations to the SEC for review and approval before enactment. This includes FINRA Rule 2080 ("Rule 2080"), which Plaintiff cites in his Complaint.

- Section 27 of the 1934 Act provides exclusive jurisdiction in federal district courts over (1) actions regarding violations of the 1934 Act or the rules and regulations promulgated thereunder, and (2) actions to enforce any liability or duty created by the 1934 Act or the rules and regulations promulgated thereunder.  15 U.S.C. § 78aa.

(Notice of Removal, Dkt. [1] at 2-4.)  Defendant concludes, "because the Complaint concerns a duty arising under the [1934] Act, as well as interpretation and application of rules FINRA issued in accordance with that federal law, removal of the State Court Action to this Court under 28 U.S.C. § 1441 is necessary and appropriate."  (Notice of Removal, Dkt. [1] at 5.)

Defendant's argument for federal jurisdiction is two-fold: (1) that Plaintiff's request to delete information from the CRD is "in actuality a request to relieve FINRA of a duty – the duty to retain information concerning

7

customer complaints – arising under the [1934] Act," and (2) the suit will require a court to interpret federal law (i.e., Rule 2080).[2]  (Notice of Removal, Dkt. [1] at 3.)  Plaintiff claims that both parts of Defendant's argument are flawed.  The Court addresses each point in turn.

### A. Enforcing a duty or liability created by the 1934 Act or the rules thereunder[3]

The question of whether a state-court action for expungement by FINRA of information in a CRD profile seeks to enforce a duty created by the 1934 Act or the rules thereunder has been squarely addressed by at least one federal district court.  In Lickiss v. Fin. Indus. Regulatory Auth., No. C-11-1986 EMC, 2011 WL 2471022, at *3 (N.D. Cal. June 22,2011), a court in the Northern District of California found that such an action is not an action to enforce a duty or liability created by the 1934 Act because no "duty to expunge" has been

---

[2] For purposes of this motion, Plaintiff "temporarily puts aside the question of whether FINRA's rules constitute federal law."  (Pl.'s MTR Br., Dkt. [6-1] at 12 n.4.)

[3] Plaintiff has not alleged any violations of the 1934 Act.  Therefore, the Court is not concerned with that avenue for federal jurisdiction under 15 U.S.C. § 78aa.  The inquiry here focuses on the second avenue – whether this is an action to enforce any liability or duty created by the Act.

8

created by the 1934 Act or the rules thereunder.  The facts and issues in Lickiss are nearly identical to those before the Court now.[4]

Lickiss contains an extensive discussion of 15 U.S.C. § 78o-3(i)(1)(A) and FINRA Rule 2080, a large part of which is relevant here.  Under 15 U.S.C. § 78o-3(i)(1)(A), registered securities associations (e.g., FINRA) shall "establish and maintain a system for collecting and retaining registration information."  FINRA maintains the CRD and BrokerCheck in accordance with this obligation.  Rule 2080 was promulgated to address expungement of registration information.  Rule 2080 provides:

> (a) Members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief.
>
> (b) Members or associated persons petitioning a court for expungement relief or seeking judicial confirmation of an

---

[4] Lickiss involved an investment advisor seeking to expunge from his CRD report references to certain customer claims and settlements that were approximately 20 years old and involved allegations with which he never had any affiliation.  The plaintiff brought suit for declaratory judgment in state court and FINRA removed to federal court.  The primary distinction between Lickiss and the case before the Court is, in Lickiss, FINRA did not assert general federal-question jurisdiction for removal, but relied on exclusive jurisdiction under 15 U.S.C. § 78aa.  However, that distinction does not impact the Court's analysis of Defendant's argument that Plaintiff is seeking to enforce or relieve FINRA of a duty created under the 1934 Act.

9

>arbitration award containing expungement relief must name
>FINRA as an additional party and serve FINRA with all
>appropriate documents unless this requirements is waived pursuant
>to subparagraph (1) or (2) below.
>
>>(1) Upon request, FINRA may waive the obligation to name
>>FINRA as a party if FINRA determines that the
>>expungement relief is based on affirmative judicial or
>>arbitral findings that:
>>>(A) the claim, allegation or information is factually
>>>impossible or clearly erroneous;
>>>(B) the registered person was not involved in the
>>>alleged investment-related sales practice violation,
>>>forgery, theft, misappropriation or conversion of
>>>funds; or
>>>(C) the claim, allegation or information is false.
>>
>>(2) If the expungement relief is based on judicial or arbitral
>>findings other than those described above, FINRA, in its
>>sole discretion and under extraordinary circumstances, also
>>may waive the obligation to name FINRA as a party if it
>>determines that:
>>>(A) the expungement relief and accompanying
>>>findings on which it is based are meritorious; and
>>>(B) the expungement would have no material adverse
>>>effect on investor protection, the integrity of the CRD
>>>system or regulatory requirements. . . .

The 1934 Act establishes a duty for FINRA to "collect" and "retain" registration information. Defendant argues that "FINRA's duty to maintain broker records necessarily includes the expungement of those records when appropriate. Therefore, expungement is inextricably entwined with a 'duty or

10

liability' created by the [1934] Act." (Def.'s Opp. Br., Dkt. [8] at 8.) However, as Plaintiff notes, Defendant does not point to any authority establishing a duty to expunge.[5]  In fact, the court in Lickiss concluded just the opposite – that there is no such duty.

In reaching its conclusion, the Lickiss court reasoned: "There is nothing in the Act, rules, or regulations that provide substantive criteria as to when expungement is appropriate."  2011 WL 2471022, at *3.  "Further, . . . there is nothing in the Act, rules, or regulations that require a registered representative such as [plaintiff] to exhaust his administrative remedies first – i.e., to seek expungement relief from FINRA first before being able to seek judicial review."  Id.  As the Lickiss opinion points out, Rule 2080 is a procedural rule setting out how registered individuals can seek expungement (by going to a court or an arbitral panel), and when FINRA will waive its right to be a party in court proceedings.  The substantive determination of whether expungement is warranted is left to the courts.

---

[5] Defendant cites several cases involving FINRA where courts have found that federal-question jurisdiction exists. (Def.'s Opp. Br., Dkt. [8] at 5-6.)  However, none of those cases deal with Rule 2080 or the alleged duty implicated here.  Defendant certainly has not pointed to any authority contradicting the reasoning or conclusion in Lickiss.

11

In seeking a declaratory judgment for expungement of certain information from his CRD profile, Plaintiff is not seeking to enforce any duty of FINRA under Rule 2080.  Nor is Plaintiff seeking to enforce FINRA's duty to collect and retain registration information under 15 U.S.C. § § 78o-3(i)(1)(A).  Therefore, a finding of federal jurisdiction cannot be supported on these grounds.

B.   Interpretation of Federal Law

The second prong of Defendant's argument for federal-question jurisdiction is that a court deciding Plaintiff's claim will have to interpret federal law.  However, Plaintiff argues that expungement does not implicate a substantial issue of federal law, and therefore, exercising federal jurisdiction is inappropriate here.  The Court agrees with Plaintiff.

When a suit raises a state-law cause of action, but turns on some construction of federal law, "federal question jurisdiction should be narrowly construed." Madzimoyo v. Bank of New York Mellon Trust, Co., N.A., 440 F. App'x 728, 730 (11th Cir. 2011).  "The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Id.  The inquiry is, "does a state-law claim necessarily raise a

12

stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities[?]" Id. (quoting Grable, 545 U.S. at 314).

Defendant argues that substantial federal issues are implicated here because any decision in this matter will require "a reading and interpretation of Rule 2080," and because this case involves a "comprehensive federal regulatory scheme in which FINRA plays an integral role in enforcing the 1934 Act and regulating participants in the securities industry." (Def.'s Opp. Br., Dkt. [8] at 8-9.) Plaintiff asserts, however, that he is not asking a state court to interpret Rule 2080, or any federal law or constitutional provision. (Pl.'s MTR Br., Dkt. [6-1] at 17.) Instead, the relief sought in the Complaint is based on analysis of the allegations in the aggrieved investors' arbitration claims against Securities America, and Plaintiff's involvement, if any, in due diligence violations.

The Eleventh Circuit has found that "fact-bound and situation-specific" issues like this one, which do not require resolution of an important question of law, do not trigger federal-question jurisdiction. Adventure Outdoors, Inc., 552 F.3d at 1299 (quoting Empire Healthchoice Assur., Inc. v. McVeigh 547 U.S.

13

677, 700 (2006)).  Here, Rule 2080 is mentioned in the Complaint simply to provide context for the relief sought.  (Complaint, Dkt. [1-1] ¶¶ 63, 68.)  Rule 2080 does not provide any substantive criteria for courts to apply to determine whether information should be expunged from an investment advisor's record.  Rule 2080(a) says only that Plaintiff must "obtain an order from a court of competent jurisdiction directing . . . expungement or confirming an arbitration award containing expungement relief."  Section (b) provides criteria for when *FINRA* may waive its right to be named as a party in court proceedings.

The Court finds that there is no substantial issue of federal law implicated here.  The fact that the 1934 Act establishes a comprehensive securities regulation regime in which FINRA participates is not sufficient to meet Defendant's burden of establishing federal question jurisdiction.  Therefore, Plaintiff's Motion to Remand is **GRANTED**.

## II.   Defendant's Motion to Dismiss

Given the Court's conclusion that it lacks subject matter jurisdiction in this case, it will not consider Defendant's motion to dismiss.  See Univ. of S. Ala., 168 F.3d at 411 ("[A] federal court must remand for lack of subject matter

14

jurisdiction notwithstanding the presence of other motions pending before the court.").

## Conclusion

Based on the foregoing, Plaintiff's Motion to Remand [6] is **GRANTED** and Defendant's Motion to Dismiss [3] is deferred for ruling by the state court. The Clerk is **DIRECTED** to remand this case to Superior Court of Cobb County, Georgia.

**SO ORDERED**, this  18th  day of , 2013.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)